UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| GINGER GLO RUMZIS, <br><br> Plaintiff, <br><br> vs. <br><br> NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | 4:18-CV-04031-KES <br><br><br> MEMORANDUM OPINION AND ORDER AFFIRMING THE DECISION OF THE COMMISSIONER |

Plaintiff, Ginger Glo Rumzis, seeks review of the decision of the Commissioner of the Social Security Administration denying her claim for disability insurance benefits (SSDI) under Title II of the Social Security Act, 42 U.S.C. § 423. Docket 18. The Commissioner opposes the motion and urges the court to affirm the denial of benefits. Docket 20. For the following reasons, the court affirms the decision of the Commissioner.

## PROCEDURAL HISTORY

Rumzis filed an application for SSDI benefits on May 12, 2014, alleging disability since October 19, 2013. AR 240. The Commissioner denied her claim initially on October 9, 2014, and upon reconsideration on April 8, 2015. AR 146, 128. Rumzis then appeared with counsel before Administrative Law Judge (ALJ) Denzel R. Busick at an administrative hearing on January 27, 2017. *See*

AR 71 (transcript of hearing). The ALJ issued an opinion affirming the denial of benefits on March 10, 2017. AR 20. The Appeals Council denied Rumzis' request for review on January 16, 2018. AR 1. Thus, Rumzis' appeal of the Commissioner's final decision is properly before the court under 42 U.S.C. § 405(g).

## FACTUAL BACKGROUND

Rumzis was born on May 8, 1973. AR 114. She was 40 years old on the alleged onset date, and she lived in Arizona when she initially applied for SSDI. AR 115. Rumzis completed a Bachelor of Arts in music education and has received an LLB from Nottingham Trent University. AR 380. She has worked several jobs in music, including as an elementary band director, choir director, and music teacher, and she also spent time working as a paralegal. AR 125.

Rumzis has a history of several medical conditions, including a herniated disc, tear, and canal stenosis in her neck, depression, anxiety, stomach issues, scoliosis, right knee damage, and neck pain related to a prior car accident. AR 295. She presented to the emergency room on October 8, 2013, complaining of weakness and dizziness that had worsened over three weeks. AR 424. She had a Head/Brain CT scan, which showed no acute intracranial abnormalities. AR 423. Rumzis again presented to the emergency room on November 20, 2013, complaining of weakness and dizziness after a chiropractor appointment. AR 417. Following a CT scan of her cervical spine that day, Dr. Ron Shinar noted mild degenerative changes at C5-6 and mild levoconvex scoliosis. AR 415. She also had an MRI of her cervical spine on February 21, 2014, and the radiologist

noted a "[t]ear of the posterior annulus with midline posterior disc herniation at C5-C6 impinging on the ventral aspect of the spinal cord resulting in mild central canal stenosis." AR 452. On February 24, 2014, Rumzis presented to the Pain Management Associates at Hedley Orthopaedics Institute in Arizona for her neck and upper back pain. AR 430. She rated her pain at a 2/10 with medication, but an 8/10 without medication. *Id.* Kirk Bowden, DO, diagnosed her with cervical spondylosis, brachial neuritis, and cervicalgia. AR 432.

Rumzis received monthly treatment for her ongoing neck pain at Heavens Medical PLC in Arizona in 2014. *See* AR 499-519. Treatment notes from Dr. Jason Heavens show that her medical providers managed her pain medication, directed her to continue with her chiropractic care and physical therapy, and discussed her cortisone injections. AR 500. Rumzis also reported that her neck pain increased her anxiety, she suffered from nausea and other side effects due to her medication, and she fatigued easily. AR 501, 503. At times, it was noted that physical therapy decreased her pain and increased her mobility. AR 505.

Rumzis received chiropractic care for her neck and upper back issues many times in 2013 and 2014. *See* AR 434-498. She also participated in several physical therapy sessions at Ideal Physical Therapy in Arizona in 2014. *See* AR 521-573. Physical therapy notes indicate that Rumzis tolerated her exercises, felt improvement in her neck pain symptoms following therapy sessions, and benefited overall. *Id.* In September 2014, Rumzis had a lipoma removed from her upper back after her providers suggested removal of the small mass in order to potentially alleviate some of her symptoms. AR 585.

As to psychological care, Rumzis saw Dr. Jessica Leclerc, a clinical psychologist in Arizona, in 2014. AR 602. Dr. Leclerc diagnosed her with panic disorder and an unspecified depressive disorder. AR 606. Dr. Leclerc noted that Rumzis did not exhibit problems with understanding, concentration, or persistence, and she scored well on a mini-mental status exam that tested her memory. AR 605-607.

In 2015 and 2016, she saw Dr. Shawn Culey at Avera in Sioux Falls for her neurological symptoms and low blood pressure. AR 708-750. After discussing many of Rumzis' labs and testing results, Dr. Culey recommended Rumzis to see Dr. Todd Zimprich, a neurologist in Sioux Falls, for her lightheadedness and fainting. AR 724. She underwent an autonomic screen test at his direction, but Dr. Zimprich noted the test did not give a "clear POTS diagnosis." AR 703. She also permanently moved back to South Dakota at some point in 2016, and Dr. Culey's notes indicate that Rumzis felt somewhat better living in South Dakota. AR 743.

**ADMINISTRATIVE HEARING**

During the administrative hearing, the ALJ heard testimony from Rumzis; Mercedes Lodnel, the daughter of Rumzis; and Frank Samlaska, a vocational expert. AR 73. Rumzis, represented by counsel at the hearing, testified about her education, work experience, and the difficulties she has had while working or around the house. She testified that she has a Bachelor of Arts in music education AR 78. Rumzis has been a music teacher, band

director, and a choral director. AR 100. She also worked as a paralegal at a law firm while attending law school. AR 101-102.

Rumzis testified that she stopped working in September or October of 2013, after she experienced her first seizure and began having dizzy spells while at school. AR 78-80. She experienced seizures or dizzy spells two or three times a week. AR 81. Rumzis testified that her episodes have been less frequent or less severe since she moved back to South Dakota from Arizona, attributing the improvement to the colder climate here. AR 82. Additionally, she suffers from a dizziness sensation every day. AR 83.

Rumzis also testified that she has experienced physical pain in her neck and her mid and lower back since September 2013. AR 85. Sometimes she must lay down due to her neck pain. AR 86. Maintaining stamina is one of her biggest issues, as she testified to experiencing chronic fatigue. AR 88-89. Rumzis also testified about headaches, which are less frequent now that she lives in South Dakota, but she still has strong pain behind her eyes. AR 92. She has a difficult time concentrating or comprehending what she reads, and while she still drives when she can, she has her daughter drive her when she does not feel comfortable. AR 85, 90-91.

Rumzis, a lifetime musician, testified about short term memory loss and how there are times when she tries to read music but the music notes look completely foreign to her. AR 93-94. On good days, she said she can drive, do dishes, and do laundry, but on bad days, she spends the entire day in bed, needs help getting dressed, and does not cook. AR 86-87. Rumzis testified

5

about how her pain has affected her socially, as she used to be a "social butterfly" but now she does not want to leave the house if she does not feel well. AR 90. Finally, Rumzis stated that she feels she can be on her feet for two hours on a good day. AR 88.

Mercedes Lodnel, the daughter of Rumzis, also testified at the hearing. AR 95. Lodnel testified that her mother's condition was worse when it first developed in 2013, but she has more good days now that they live in South Dakota. AR 96-98. She has witnessed her mother's seizure-like episodes and explained that it is difficult to calm her mother down during the episodes. AR 97. Lodnel, who has also been Rumzis' student, testified that in the past her mother was happy, not jittery, and enthused about her job. AR 99-100. But now, according to Lodnel, her mother keeps more to herself. AR 100.

In response to the ALJ's first hypothetical limiting Rumzis to a light level of exertion, Samlaska testified that Rumzis could perform her past work as it existed in the national economy. AR 105. But Samlaska noted that Rumzis would not be able to perform her past music jobs at the higher exertional level that she previously performed. *Id.* When asked if someone's medical impairments caused an individual to be absent more frequently, Samlaska testified that such an individual would not be able to perform Rumzis' past work. AR 106.

The ALJ then posed a second hypothetical to Samlaska, which included moderate limitations with concentration, persistence, and pace, and limited the individual to work involving simple, routine, and repetitive tasks of three to

6

four steps. AR 106-107. In response, Samlaska testified that such an individual could not perform Rumzis' past work and could not transfer her skills to other semiskilled jobs. AR 107. But Samlaska indicated this individual could perform some light, unskilled jobs, such as a housekeeper, service clerk, or labeling machine tender. AR 107-108. When asked by Rumzis' attorney if someone could perform these light, unskilled jobs if she was off task 20 percent of the workday, Samlaska said no. AR 109.

## ALJ DECISION

Employing the five-step analysis associated with an application for social security benefits, the ALJ denied Rumzis' claim on March 10, 2017. AR 20. At step one, the ALJ found that Rumzis had not engaged in substantial gainful activity since October 19, 2013, the alleged onset date. AR 22. At step two, the ALJ concluded that Rumzis suffered from the following severe impairments: degenerative disc disease, dysfunction of the major joints, affective disorder, and panic disorder. *Id.* At step three, the ALJ determined that Rumzis does not have an impairment, or combination of impairments, that meets or medically equals the severity required under 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* At step four, the ALJ concluded that Rumzis was unable to perform any past relevant work (AR 30), but had the residual functional capacity (RFC) to perform less than a full range of light work as defined in 20 C.F.R. § 404.1567(b).[1] AR 24. At step five, the ALJ found that there were jobs in the

---

[1] The ALJ found that Rumzis "can lift and carry 20 pounds occasionally and 10 pounds or less frequently. She can sit a total of 6 hours as well as stand and walk, combined, a total of 6 hours in an 8-hour workday. She has only

national economy that Rumzis could have performed. AR 30. Thus, the ALJ concluded that Rumzis was not disabled under the Social Security Act. AR 31.

## STANDARD OF REVIEW

The court must uphold the ALJ's decision if it is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). " 'Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the conclusion.' " *Teague*, 638 F.3d at 614 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). When reviewing the record, "the court 'must consider both evidence that supports and evidence that detracts from the Commissioner's decision.' " *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007)). If the Commissioner's decision is supported by substantial evidence in the record as a whole, the court may not reverse it merely because substantial evidence also exists in the record that would support a contrary position or because the court would have

---

occasional overhead reach – bilaterally. She can climb stairs frequently but slowly, using a handrail, and can only occasionally climb ladders, scaffolds and similar devices. She can balance, crouch, kneel, stoop and crawl frequently. She must avoid concentrated exposure to work hazards such as unprotected heights, fast and dangerous machinery. Due to a combination of impairments, the claimant has moderate limitations in concentration, persistence and pace, as heretofore noted, which limit her to work involving only simple, routine and repetitive tasks of three to four steps on average." AR 24.

determined the case differently. *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)).

The court also reviews the Commissioner's decision to determine if an error of law has been committed, which may be a procedural error, the use of an erroneous legal standard, or an incorrect application of the law. *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011) (citations omitted). Issues of law are reviewed de novo with deference accorded to the Commissioner's construction of the Social Security Act. *Id.* (citing *Juszczyk v. Astrue*, 542 F.3d 626, 633 (8th Cir. 2008)).

### THE FIVE STEP PROCEDURE FOR DISABILITY DETERMINATIONS

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(3)(A). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). An ALJ must apply a five-step procedure when determining if an applicant is disabled. *Smith v. Shalala*, 987 F.2d 1371, 1373 (8th Cir. 1993). The steps are as follows:

**Step One**: Determine whether the applicant is presently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b); 20 C.F.R. § 416.920(b).

**Step Two**: Determine whether the applicant has an impairment or a combination of impairments that are severe. 20 C.F.R. § 404.1520(c); 20 C.F.R. § 416.920(c).

**Step Three**: Determine whether any of the severe impairments identified in Step Two match the listing in Appendix 1. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 416.920(d).

**Step Four**: Considering the applicant's RFC, determine whether the applicant can perform any past relevant work. 20 C.F.R. § 404.1520(f); 20 C.F.R. § 416.920(f).

**Step Five**: Determine whether any substantial gainful activity exists in the national economy that the applicant can perform. 20 C.F.R. § 404.1520(g); 20 C.F.R. § 416.920(g).

## DISCUSSION

Rumzis urges the court to reverse the ALJ's decision, contending that the ALJ erred at step five of the analysis. Specifically, Rumzis argues that there was not "substantial evidence in the record to support the ALJ's determination that considering [Rumzis'] age, education, work experience, and residual functional capacity, she could perform jobs such as a housekeeper cleaner, a service clerk, or a label machine tender." Docket 19 at 10-11. Rumzis also argues that the ALJ did not properly consider her statements regarding her symptoms and complaints of pain when determining Rumzis' RFC and whether

Rumzis could perform unskilled jobs in the national economy. Docket 19 at 12-13. The court will address this latter argument first as it relates to step four on the five-step process.

I.  **Whether the ALJ Properly Considered Rumzis' Statements about her Symptoms and Pain**

In arguing that Rumzis is unable to perform unskilled jobs, such as the ones listed by the vocational expert, Rumzis references her credibility as a witness and the statements she made about her symptoms. Docket 19 at 12. Rumzis contends that "even some consistency of the symptoms [she described] would preclude her from working at any unskilled job." *Id.*

First, the court notes that a claimant's statements about her symptoms, previously referred to as "credibility," are evaluated by the ALJ to determine the claimant's RFC—not in relation to whether a claimant can perform jobs listed by a vocational expert at step five. *See* SSR 16-3p, 2016 WL 1119029, at *11 (Mar. 26, 2016) ("An individual's residual functional capacity is the most the individual can still do despite his or her impairment-related limitations. We consider the individual's symptoms when determining his or her residual functional capacity and the extent to which the individual's impairment-related symptoms are consistent with the evidence in the record."). Second, the ALJ does not evaluate a claimant's statements about the intensity, persistence, and effect of her symptoms in isolation at this step. The ALJ must also determine if the objective medical evidence in the record supports the severity of a claimant's alleged symptoms. *See Crawford v. Colvin*, 809 F.3d 404, 410 (8th Cir. 2015) ("[A]n ALJ may disbelieve a claimant's subjective reports of pain

11

because of inherent inconsistencies or other circumstances." (internal quotation omitted)).

Rumzis argues there is some consistency between her symptoms and the evidence in the record that could support an alternative decision by the ALJ. Docket 19 at 12. But this is not for this court to decide. The court will not substitute its judgment for that of the ALJ. *Fastner v. Barnhart*, 324 F.3d 981, 983 (8th Cir. 2003). The ALJ explained why he did not find Rumzis' statements "entirely consistent with medical evidence and other evidence in the record" (AR 25) by citing to objective medical evidence in the record. *See* AR 24-30. After reviewing the record as a whole, the court finds there is substantial evidence to support the ALJ's decision regarding the consistency between Rumzis' statements about her symptoms and the objective medical evidence in determining Rumzis' RFC.

## II. Whether Substantial Evidence Supports the ALJ's Finding Regarding her Ability to Perform Other Jobs

Rumzis argues that there is not substantial evidence in the record to support the ALJ's finding that she could perform other jobs in the national economy. She bases her argument on the fact that when asked by plaintiff's attorney if a person off task 20 percent of the workday could perform the unskilled jobs of housekeeper cleaner, service clerk, or label machine tender listed by the vocational expert, the vocational expert said no. Docket 19 at 11.

If the ALJ finds that a claimant cannot perform her past work, the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in the national economy. *Jones v. Astrue*, 619

F.3d 963, 971 (8th Cir. 2010) (quotations omitted). The ALJ's determination that a claimant can perform work that exists in the national economy must be supported by substantial evidence. *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004). "Testimony from a vocational expert constitutes substantial evidence only when based on a properly phrased hypothetical question." *Id.* at 784 (quoting *Cruze v. Chater*, 85 F.3d 1320, 1323 (8th Cir. 1996)). A hypothetical question posed to the vocational expert is sufficient if it includes impairments accepted as true by the ALJ. *Roberts v. Apfel*, 222 F.3d 466, 471 (8th Cir. 2000).

Here, in reviewing the medical evidence and explaining what weight to give to various medical providers, the ALJ noted that Rumzis' psychological consultative examiner, Jessica Leclerc, Ph.D., stated that Rumzis could follow three-step instructions with no limitations in sustained concentration. AR 28. The ALJ gave Dr. Leclerc's statements "significant weight" because they supported limitations in Rumzis' RFC. *Id.*

Then in step five, the ALJ's hypothetical question to the vocational expert included a limitation involving simple, three to four step tasks and moderate limitations with concentration, persistence, and pace. AR 106-107. Thus, the ALJ's hypothetical properly included impairments that were supported by substantial evidence in the record. *See Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006) (noting that a hypothetical should "capture the concrete consequences" of a claimant's impairments (internal quotation omitted)). In addition, the ALJ's hypothetical was consistent with his RFC finding.

13

The court finds that the ALJ's hypothetical to the vocational expert was properly phrased, and thus the vocational expert's testimony in response constitutes substantial evidence to support the ALJ's finding at step five. *Tucker*, 363 F.3d at 783. In her reply, Rumzis references testimony presented at the hearing and how it is "reasonable to hypothesize that [Rumzis] would be 'off task 20 percent of the workday' " or would need extra breaks based on this evidence. Docket 24 at 2-3. The court does not find this persuasive because Rumzis has not pointed to objective medical evidence or a medical provider's findings establishing how Rumzis' conditions would cause her to be off task 20 percent of the work day. Thus, posing this question to the vocational expert did not undermine the ALJ's findings at step five, which were properly based on the vocational expert's testimony.

### III. Whether Remand is Appropriate because the Appeals Council did not Consider Additional Evidence

Finally, Rumzis argues in her reply brief for the first time that this court should remand the decision to the agency to consider additional evidence. Docket 24 at 3. Rumzis contends that the Appeals Council refused to consider new medical evidence submitted to it, which showed Rumzis had been diagnosed with POTS syndrome/dysautonomia. *Id.* at 3-4.

The Eighth Circuit has summarized a court's ability to review an Appeals Council's decision as follows:

> We first determine the effect of the evidence submitted to the Appeals Council. The regulations provide that the Appeals Council must evaluate the entire record, including any new and material evidence that relates to the period before the date of the ALJ's decision. *See* 20 C.F.R. § 404.970(b). The newly submitted evidence

14

> thus becomes part of the "administrative record," even though the evidence was not originally included in the ALJ's record. *See Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992). If the Appeals Council finds that the ALJ's actions, findings, or conclusions are contrary to the weight of the evidence, including new evidence, it will review the case. *See* 20 C.F.R. § 404.970(b). Here, the Appeals Council denied review, finding that the new evidence was either not material or did not detract from the ALJ's conclusion. In these circumstances, we do not evaluate the Appeals Council's decision to deny review, but rather we determine whether the record as a whole, including the new evidence, supports the ALJ's determination. *See Nelson*, 966 F.2d at 366.

*Cunningham v. Apfel*, 222 F.3d 496, 500 (8th Cir. 2000).

20 C.F.R. § 404.970(b) further provides that the Appeals Council will only consider the additional evidence if the claimant shows good cause for not submitting the evidence earlier. Here, the Appeals Council found that Rumzis did not provide good cause for not submitting the additional evidence sooner. AR 2. Thus, the Appeals Council did not consider the evidence, notified Rumzis of her right to file a new application, and denied review of the ALJ's decision. *Id.* Because the Appeals Council denied review, this court does not evaluate the Appeals Council's decision to deny review. *Cunningham*, 222 F.3d at 500; *see also Browning v. Sullivan*, 958 F.2d 817, 822-23 (8th Cir. 1992) (concluding that because the Appeals Council denied review despite new evidence and thus the court lacked jurisdiction to review the Appeals Council's decision to deny review, the issue is whether the new evidence changes the court's conclusion that substantial evidence supported the ALJ's final decision).

The court "consider[s] evidence that supports the ALJ's decision as well as evidence that detracts from it, but even if inconsistent conclusions may be

15

drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Looking at the additional evidence Rumzis submitted to the Appeals Council, which has been made part of the record (*see* AR 9-70), the court concludes that substantial evidence still supports the ALJ's findings here. The physician at Broadspire listed dizziness, blurred vision, loss of speech, hypotension, lightheadedness, memory loss, loss of balance, and muscle spasms as symptoms of POTS. AR 15. While the court is cognizant of the fact that the record from Broadspire diagnosed Rumzis with POTS syndrome/dysautonomia for the first time, POTS was discussed as a possibility by Rumzis' other providers and the ALJ fully considered the symptoms of POTS and the objective medical evidence treating those symptoms in his findings. *See* AR 24-30. Thus, the court does not find the additional evidence submitted to the Appeals Council mandates a remand to the ALJ.

## CONCLUSION

The court concludes that substantial evidence in the record supports the ALJ's findings regarding the consistency between Rumzis' statements about her symptoms and the objective medical evidence. Additionally, the ALJ's hypothetical posed to the vocational expert mirrored the ALJ's RFC finding and properly included all limitations found by the ALJ based on the evidence in the record. Thus, the vocational expert's response constitutes substantial evidence to support the ALJ's finding at step five. Finally, the additional evidence submitted to the Appeals Council does not detract from this court's decision

16

that substantial evidence supported the ALJ's findings. Because substantial evidence supports the ALJ's decision,

IT IS ORDERED that the decision of the Commissioner is affirmed.

Dated January 23, 2019.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE